UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
Central Division

| | |
|---|---|
| SANDRA PEREIRA, | ) |
| Plaintiff | ) |
| v. | ) Civil Action No. |
| ANNA MARIA COLLEGE, | ) |
| Defendant | ) |

# COMPLAINT AND DEMAND FOR JURY TRIAL

## Parties, Jurisdiction, and Venue

1. Plaintiff Sandra Pereira ("Ms. Pereira") is an individual residing at 162 Barthel Avenue in Gardner, MA 01440.

2. Defendant Anna Maria College ("the College") is a liberal arts college based in Paxton, Massachusetts.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

4. This Court has personal jurisdiction over the parties, and the venue is appropriate.

## Facts

5. Ms. Pereira began working as the Director of the College's Financial Aid Office ("FAO") in or about August 2010.

6. Prior to working for the College, Ms. Pereira had fifteen years of experience working in collegiate financial aid.

7. From 2010 to 2017, Ms. Pereira received positive performance evaluations.

8. In April 2017, John Hamel was hired as the College's Vice President of Admissions and Financial Aid.

9. Soon after Mr. Hamel started, staffing in the FAO was reduced from 4.5 full-time employees to three.

10. It quickly became clear to Ms. Pereira that the reduced team would have great difficulty handling the expected workload.

11. The problem was serious enough that Ms. Pereira raised it with Mr. Hamel at every weekly staff meeting.

12. Mr. Hamel was entirely unsympathetic and offered no solutions other than instructions for Ms. Pereira and her team to "get the work done."

13. Ms. Pereira took on the majority of the extra work produced by the staffing shortage, including a great deal of work that had been performed by financial aid counselors.

14. Ms. Pereira did not receive a pay increase or recognition of any kind for performing this additional work.

15. On or about August 22, 2017 Ms. Pereira again raised the severe staff shortage with Mr. Hamel and he responded by suggesting that he could replace her with someone who would "get the job done" with the existing staffing levels.

16. Increasingly concerned about the ability of her office to fulfill its responsibilities at a level consistent with both practical realities and federal regulations, Ms. Pereira proposed that the College retain Higher Education Assistance Group, Inc. ("HEAG"), a consulting group specializing in financial aid offices, to evaluate whether the staffing in the FAO was appropriate.

17. Ms. Pereira expressed her feelings that she was being set up to fail and that the College was in danger of being out of compliance with federal regulations.

18. The College's human resources department appeared to be most concerned with whether HEAG would report the understaffing to the Department of Education and that the college might be forced to hire additional staff.

19. Ms. Pereira's request was not approved, and no consultants were hired with respect to the understaffing problem.

20. Ms. Pereira subsequently met with Human Resources to reiterate her concerns about the understaffing and said that Mr. Hamel was subjecting her to harassment in retaliation for her expressing those concerns, but no action was taken.

21. Mr. Hamel was extremely resentful of Ms. Pereira for having spoken with the human resources department, and made clear to her that if she raised the staffing shortage again she would be terminated.

22. From that point on, his attitude towards Ms. Pereira remained one of disrespect and discourtesy.

23. Every time Ms. Pereira explained to Mr. Hamel that certain tasks could not possibly be completed on time, Mr. Hamel ignored her warnings and ordered her to "get it done" no matter what.

24. In April 2018, departing from standard practice at the College, Mr. Hamel declined to meet with Ms. Pereira with respect to her annual evaluation, handing it to her without comment. Ms. Pereira was not given the opportunity to discuss the evaluation with him.

25. In at least one instance, Ms. Pereira informed the College's auditor that she remained extremely concerned about the staffing shortage in her department. The understaffing was explicitly referred to in at least one auditor report.

26. In the fall of 2018, Ms. Pereira mentioned to Mr. Hamel that she was putting in a minimum of 40 hours of overtime every month.

27. Mr. Hamel complained that she should put in more time.

28. Ms. Pereira explained that she was not in a position to do that given her family obligations and responsibilities, but Mr. Hamel was unsympathetic.

29. The staffing shortage and demands being placed on Ms. Pereira caused her an extraordinary amount of stress.

30. The stress was so great that it imposed serious health consequences on Ms. Pereira, including but not limited to hypertension; broken blood vessels in her eyes; and elevated blood sugar levels for which she required medication.

31. On April 23, 2019 Ms. Pereira requested paperwork from Jan Ruggieri (the interim Director of Human Resources at the time) to submit a request for leave pursuant to the federal Family and Medical Leave Act (FMLA).

32. The next day, Ms. Ruggieri contacted Ms. Pereira to ask about the request and Ms. Pereira explained that due to her significantly elevated blood pressure, her doctor recommended that she have the flexibility to take time off intermittently.

33. Ms. Pereira explicitly told Ms. Ruggieri that she was concerned she would be unable to take the recommended time off because she feared retaliation from Mr. Hamel.

34. Ms. Ruggieri indicated that she would need to do some "research" before getting back to Ms. Pereira later.

35. Ms. Ruggieri also made a comment insinuating that Ms. Pereira was seeking leave merely to protect her employment status.

36. On April 25, 2019 a letter from Mr. Hamel dated the day before was placed on Ms. Pereira's desk in which Mr. Hamel dismissed Ms. Pereira's complaints about his conduct on the grounds that the College had not found him to have engaged in harassment nearly two years before.

37. Mr. Hamel's letter concluded with a warning to Ms. Pereira that "your employment status will be reviewed and I will contact you to schedule a meeting."

38. Ms. Pereira did not receive the FMLA paperwork until later on the same day she received Mr. Hamel's letter, after it had been made clear to her that her position was in jeopardy.

39. Ms. Pereira subsequently took earned sick leave according to instructions from her doctor.

40. On May 20, 2019 Ms. Pereira submitted the FMLA paperwork.

41. The very next day, May 21, Ms. Pereira was called into a meeting with Ms. Ruggieri and Michael Miers.

42. During the meeting, Ms. Pereira reiterated her feelings that she was being subjected to a hostile work environment and harassment, and asked if any corrective actions would be taken with respect to Mr. Hamel's conduct.

43. The day after that meeting, on May 22, 2019, Ms. Pereira was terminated.

44. Since Ms. Pereira's termination, the College has hired additional staff for its FAO and currently employs five staff members as Ms. Pereira had recommended.

## COUNT I
### Violations of 29 U.S.C. § 2615(a)

45. Ms. Pereira restates the allegations in each of the foregoing paragraphs and incorporates them herein.

46. Through its conduct described in the foregoing paragraphs, the College interfered with Ms. Pereira's right to take leave pursuant to the FMLA in violation of 29 U.S.C. § 2615(a)(1).

47. The College's termination of Ms. Pereira's employment was motivated by her invocation of her right to take leave pursuant to the FMLA and constituted retaliation in violation of 29 U.S.C. § 2615(a)(2).

48. Pursuant to 29 U.S.C. § 2617, the College is liable to Ms. Pereira for the full amount of her compensatory damages proven at trial, plus liquidated damages in an equal amount, as well as Ms. Pereira's attorneys' fees and costs incurred.

## COUNT II
### Violations of M.G.L c. 149 § 148C

49. Ms. Pereira restates the allegations in each of the foregoing paragraphs and incorporates them herein.

50. Through its conduct described in the foregoing paragraphs, the College interfered with Ms. Pereira's right to take earned sick time pursuant to M.G.L. c. 149 § 148C.

51. The College's termination of Ms. Pereira's employment was motivated by her exercise of her right to take sick time pursuant to M.G.L. c. 149 § 148C, and constituted retaliation in violation of that statute.

52. Pursuant to M.G.L. c. 149 § 150, the College is liable to Ms. Pereira for the full amount of her compensatory damages proven at trial, as well as Ms. Pereira's attorneys' fees and costs incurred.

## COUNT III
### Wrongful Termination in Violation of Public Policy

53. Ms. Pereira restates the allegations in each of the foregoing paragraphs and

incorporates them herein.

54. The College's termination of Ms. Pereira's employment was motivated by resentment of her insistence on compliance with applicable federal standards and regulations.

55. Under the public policy exception to the at-will doctrine, the College is liable to Ms. Pereira for her compensatory damages proven at trial.

WHEREFORE, the Plaintiff requests that the Court award her the following relief:

A) Judgment against the Defendant in the amount of her compensatory damages, plus liquidated damages;

B) Judgment against the Defendant in the amount of her attorneys' fees and costs incurred in bringing this action; and

C) Such other and further relief as the Court deems appropriate.

**THE PLAINTIFF DEMANDS A JURY TRIAL AS TO ALL ISSUES SO TRIABLE.**

Respectfully submitted,

Plaintiff Sandra Pereira by her attorney,

*/s/Benjamin C. Rudolf*
Benjamin C. Rudolf, BBO#667695
Murphy & Rudolf, LLP
One Mercantile Street, Suite 740
Worcester, MA 01608
Telephone: (508) 425-6330
Fax: (508) 536-0834
brudolf@murphyrudolf.com

Dated: August 27, 2020

## **VERIFICATION**

Now comes Sandra Pereira and states on oath the following:  My name is Sandra Pereira, and I have read the factual allegations of the Verified Complaint and Claim of Trial by Jury to which this Verification is attached.  I state on oath with respect to such factual allegations that they are true and accurate based upon my own personal knowledge and based upon information that I have received from others and which information I believe to be true, and that to the best of my knowledge no material facts have been omitted.

Subscribed and sworn to this 26th day of August, 2020.

*/s/Sandra Pereira*
Sandra Pereira